| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | FOR ONLINE PUBLICATION ONLY |

LUIS RAMOS,

                               Petitioner,

        - versus -

JOSEPH T. SMITH,

                               Respondent.

MEMORANDUM
AND ORDER
12-CV-4653

A P P E A R A N C E S

    LUIS RAMOS
        Shawangunk Correctional Facility
        200 Quick Road
        P.O. Box 750
        Walkill, New York 12589
        *Petitioner* Pro Se

    CHARLES J. HYNES
        Office of the District Attorney, Kings County
        Renaissance Plaza
        350 Jay Street
        Brooklyn, New York 11201
    By:    Jill Kirsten Oziemblewski
        *Attorney for Respondent*

JOHN GLEESON, United States District Judge:

        Luis Ramos brings this *pro se* habeas petition, seeking release from Shawangunk Correctional Facility. Ramos contends that his ongoing detention, stemming from a state court judgment of conviction for manslaughter in the first degree, violates his Fourteenth Amendment rights. For the reasons set forth below, I deny the petition.

BACKGROUND

A.    *The Offense Conduct*

        In March 2009 Ramos was tried in the Supreme Court of the State of New York, Kings County, on two counts of murder in the second degree, N.Y. Penal Law § 125.25(1), one

count of criminal possession of a weapon in the third degree, N.Y. Penal Law § 265.02(3), and one count of criminal possession of a weapon in the fourth degree, N.Y. Penal Law § 265.01(2). During trial, the state presented evidence of the following:

On the evening of October 2, 2004, going into the morning of October 3, 2004, Norma Rodriguez got into an argument with Ramos on a stoop on Bleecker Street between Wilson and Central Avenues in Brooklyn. Tr. 101.[1] The argument escalated and the two began swinging at each other. Tr. 103. Following the argument, Rodriguez ran into her brother, Carlos Rodriguez, and informed him of what had happened. Tr. 104. Carlos and Norma returned to Bleecker Street, where Carlos and Ramos began fighting. Tr. 104-05. The block was filled with people. Tr. 105. Ramos was apparently on the losing end of the fight, prompting several individuals to laugh at him. Tr. 149.

Following the fight, Ramos left the block but then returned twenty minutes later. Tr. 257. When Ramos returned, he was carrying a silver handgun. Tr. 258. He walked towards a bodega on the corner of Bleecker and Wilson. Tr. 258. At that time of night, the bodega served customers through a window. Tr. 259. Shortly thereafter, six gunshots were fired. Tr. 24, 27, 33, 37. Harold Mason was struck in the back with a bullet that perforated his thoracic aorta and heart. Tr. 35, 84. People began running away from the corner, Tr. 150, 152, including Ramos, who ran into a building on Bleecker Street, Tr. 253, 255. He was carrying the silver handgun as he ran. Tr. 254-55. Soon thereafter, Ramos left the building, got into a car, and left. Tr. 262. Mason died later that morning from the gunshot wound. Tr. 39, 92.

In December 2004 Ramos had a conversation with Tristan Fox, an acquaintance from the neighborhood. Tr. 194, 196. Ramos admitted to Fox that on the night of the shooting,

---

[1] I will use "Tr." to denote the trial transcript, which is filed as Exhibit A to the Response to the Order to Show Cause, ECF No. 8. I will use "S. Tr." to denote the sentencing transcript, which is filed as Exhibit B to the Response to the Order to Show Cause.

2

"he was high and drunk, and he blacked out, and he went to the corner and started spraying, shooting." Tr. 201. He also told Fox that Mason was "a crackhead or something," and that "no one would care." Tr. 201. Finally, he said to Fox that he didn't think that the gun "would kill anybody . . . [b]ecause it was a small caliber." Tr. 201.

Following a police investigation spanning approximately two years, Ramos was arrested in Syracuse, New York. Oziemblewski Aff. ¶ 6, ECF No. 8.

B.   *The Trial Court Proceedings and Sentencing*

Prior to jury deliberations, Ramos moved to dismiss both counts of second degree murder – one count based on a theory that Ramos intended to kill Mason and the other based on a theory of transferred intent. Tr. 285-86. The trial court granted the motion to dismiss the count based on the theory that Ramos intended to kill Mason, finding no evidence to support the conclusion that Ramos targeted Mason in particular.[2] Tr. 290. The trial court denied the motion to dismiss the other count of second degree murder, Tr. 290, and over Ramos's objection submitted the lesser included offense of first degree manslaughter to the jury, Tr. 304-05. On March 24, 2009 the jury acquitted Ramos of the single count of second degree murder and convicted him of one count of first degree manslaughter.[3] Tr. 401. On April 22, 2009 Ramos was sentenced to twenty-one years of imprisonment and five years of post-release supervision. S. Tr. 21.

C.   *The Direct Appeal*

Ramos appealed his conviction to the Appellate Division of the Supreme Court of New York, Second Department. Resp. Order to Show Cause, Ex. C (Br. Def.-Appellant).

---

[2]   Both counts of criminal possession of a weapon were also dismissed prior to jury deliberations. Tr. 290, 313.
[3]   At Ramos's request, the trial court also submitted the count of second degree manslaughter to the jury. Tr. 206.

3

Ramos argued that his conviction should be overturned because the evidence was legally insufficient to support a conviction.[4] Specifically, Ramos contended that there was legally insufficient evidence that he intended to cause serious physical injury when he fired the gun outside the bodega. The Appellate Division affirmed Ramos's conviction on January 18, 2011. *People v. Ramos*, 914 N.Y.S.2d 673 (N.Y. App. Div. 2011).

Ramos sought leave to appeal to the New York State Court of Appeals on February 11, 2011. Resp. Order to Show Cause, Ex. F (Ramos Appl. Leave Appeal). In his application for leave to appeal, Ramos stated that this case presented "an opportunity for the Court to make clear that for the prosecution to prove intentional manslaughter, as opposed to reckless manslaughter or depraved indifference murder, a target or targets must be identified." *Id*. On June 14, 2011 the Court granted Ramos leave to appeal. *People v. Ramos*, 17 N.Y.3d 799 (N.Y. 2011).

The Court of Appeals unanimously affirmed Ramos's conviction on May 1, 2012. *People v. Ramos*, 19 N.Y.3d 133 (N.Y. 2012). The Court of Appeals held:

> Viewing the evidence in the light most favorable to the People, a reasonable jury could have concluded that defendant fired his gun with the intent to cause serious physical injury and, as a result, caused Mason's death. Based on the trial testimony, the jury could have determined that defendant was embarrassed when he was mocked by the individuals who witnessed his prior altercation on the street. The timing of his retrieval of a gun and his use of it to shoot into a group of people standing outside a nearby bodega, further supports the finding that defendant acted with the requisite intent. Moreover, from defendant's own after-the-fact statement that he did not believe his small caliber weapon would kill anyone, the jury could draw the inference that he did believe shooting the gun would cause serious physical injury and that he intended that result. Under these circumstances, defendant's conviction for

---

[4] Ramos also argued that the trial court imposed an excessive sentence, a claim he does not raise in his habeas petition.

4

>   manslaughter in the first degree was supported by legally sufficient evidence.

*Id*. at 136.  The Court further held as follows: "This conclusion is not negated by the possibility that defendant's conduct also might have been deemed consistent with a reckless state of mind.  There is no contradiction in saying that a defendant intended serious physical injury, and was reckless as to whether or not death occurred."  *Id*.  (citations omitted).

Ramos filed the instant petition for habeas corpus on September 12, 2012.  Pet., ECF No. 1.

## DISCUSSION

A.   *Standard of Review*

Under the Antiterrorism and Effective Death Penalty Act of 1996, federal habeas relief is available when a "person in custody pursuant to the judgment of a State court . . . is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A federal court may grant habeas relief "with respect to a[] claim that was adjudicated on the merits in State court proceedings" only if the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

B.   *Analysis*

Ramos contends that he must be released because the evidence presented against him was legally insufficient to support a conviction for manslaughter in the first degree.  Specifically, Ramos argues that the evidence was legally insufficient "to support a finding of

5

intentional conduct since all of the evidence adduced at trial went to a theory of reckless conduct."[5] Pet. Suppl. at 1.

It is fundamental that a criminal conviction offends the Due Process Clause of the Fourteenth Amendment unless it is based "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question thus presented is "whether, as a matter of federal law, there was sufficient evidence for a jury to find that the prosecution proved the substantive elements of the crime as defined by state law." *Jackson v. Virginia*, 443 U.S. 307, 324 & n.16 (1970). A habeas petitioner cannot prevail on a claim of legally insufficient evidence if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). Accordingly, a claim challenging the legal sufficiency of evidence is subject to "a 'doubly deferential standard of review,'" deferring "first to the jury verdict, drawing all inferences in its favor," and then "[s]econd . . . to the state courts' rejection of the defendant's constitutional arguments, at least insofar as it did not result from an unreasonable determination of the facts or an unreasonable application of clearly established federal law." *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012).

Under New York law, a person is guilty of first degree manslaughter when "with intent to cause serious physical injury to another person, he causes the death of such person or of a third person." N.Y. Penal Law § 125.20(1). In its opinion affirming Ramos's convictions, the New York Court of Appeals ruled that "[v]iewing the evidence in the light most favorable to the People, a reasonable jury could have concluded that defendant fired his gun with the intent to

---

[5] When a person "recklessly causes the death of another person," he is guilty of manslaughter in the second degree. N.Y. Penal Law § 125.15(1).

6

cause serious physical injury and, as a result, caused Mason's death." *Ramos*, 19 N.Y.3d at 136. The court cited to three pieces of evidence that supported the finding that Ramos acted with the requisite intent. First, it pointed to testimony that Ramos "was embarrassed when he was mocked by the individuals who witnessed his prior altercation on the street."[6] *Id*. Second, the court observed that "[t]he timing of [Ramos's] retrieval of a gun and his use of it to shoot into a group of people standing outside a nearby bodega" buttressed the finding that Ramos acted with intent to cause serious physical injury. *Id*. Third, the court noted that "from [Ramos]'s "own after-the-fact statement that he did not believe his small caliber weapon would kill anyone, the jury could draw the inference that he did believe shooting the gun would cause serious physical injury and that he intended that result." *Id*. Finally, the court noted that its finding of intent "is not negated by the possibility that defendant's conduct also might have been deemed consistent with a reckless state of mind," for "[t]here is no contradiction in saying that a defendant intended serious physical injury and was reckless as to whether or not death occurred." *Id*. (citations omitted).

Ramos's claim fails under both standards of deference. A reasonable jury could have found that Ramos had the requisite intent to cause serious physical injury. The evidence that Ramos was publicly humiliated and shortly thereafter retrieved a gun and fired it multiple times in close proximity to where he was humiliated could prompt a rational factfinder to draw the inference that he intended to seriously injure someone.[7] A fortiori, the New York Court of

---

[6] There was conflicting testimony as to whether Ramos actually lost the fight. Morales testified that people laughed at Ramos "because apparently [Carlos Rodriguez] won the fight," Tr. 149, but Rivera testified that Ramos and his cousin, who later joined the fight, got the better of Carlos, Tr. 250. Federal habeas courts are not free to reassess fact-specific credibility judgments by juries or to assess conflicting testimony. 28 U.S.C. § 2254(d); *Gruttola v. Hammock*, 639 F.2d 922, 927 (2d Cir. 1981). Moreover, a finding that spectators to the fight laughed at Ramos, and that he was therefore humiliated, is not necessarily in tension with a finding that he ultimately won the fight.

[7] The New York Court of Appeals also made the valid observation that Ramos's later statement that he did not believe his small caliber weapon would kill anyone could prompt a rational factfinder to draw the

7

Appeals's conclusion that the evidence was sufficient to meet the state law definition was neither an unreasonable application of federal constitutional law nor based on an unreasonable determination of the facts. Accordingly, the evidence was legally sufficient to support a conviction for manslaughter in the first degree.

## CONCLUSION

For the reasons provided herein, the petition is hereby denied. No certificate of appealability shall issue.

So ordered.


John Gleeson, U.S.D.J.


Dated: April 30, 2013
      Brooklyn, New York

---

inference that "he did believe shooting the gun would cause serious physical injury and that he intended that result." *Ramos*, 19 N.Y.3d at 136.